IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANGELINA JACOB,

    Plaintiff,

    v.

RENEGADE AUTO TRANSPORT
CORP., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-2862-TWT

**OPINION AND ORDER**

This is a personal injury action. It is before the Court on the Defendant Prime Property & Casualty Co. ("Prime")'s Motion for Summary Judgment [Doc. 42]. For the reasons set forth below, the Defendant Prime's Motion for Summary Judgment [Doc. 42] is GRANTED.

### I. Background[1]

This case arises from alleged injuries that the Plaintiff Angelina Jacob sustained in a car accident in Georgia involving a truck owned by the Defendant Renegade Auto Transport Corp. ("Renegade") and insured by the Defendant Prime. (Def. Prime's Statement of Undisputed Material Facts ¶ 4; Compl. ¶ 1). Prime is an Illinois company with its principal place of business

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

in Utah; Prime does not transact business or own property in Georgia, nor is it registered to do business in Georgia. (Def. Prime's Statement of Undisputed Material Facts ¶¶ 6–8). Relevant to the present case, Prime issued a commercial auto insurance policy to Renegade in Florida that was in effect when the Plaintiff allegedly sustained her injuries. (*Id.* ¶¶ 1, 9). That policy covered accidents occurring within the United States. (Doc. 42-2, at 17).

On March 10, 2022, the Plaintiff filed suit in DeKalb County State Court against Renegade, Prime, and the driver of Renegade's truck. The Defendants removed to this Court on July 20, 2022. Prime filed its answer on July 27, 2022, affirmatively defending on the ground that it is not subject to personal jurisdiction in this Court. (Doc. 4, at 9). As early as October 27, 2022, Prime's counsel sought a stipulation as to the dismissal of Prime from the case for lack of personal jurisdiction. (Doc. 47-1, at 4). Prime now moves for summary judgment based on a lack of personal jurisdiction.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

The Defendant Prime moves for summary judgment for lack of personal jurisdiction, arguing that it should be dismissed from the case because it does not transact business within Georgia or have sufficient minimum contacts with the state. (Br. in Supp. of Def. Prime's Mot. for Summ. J., at 2). In response, the Plaintiff contends that this Court retains personal jurisdiction over Prime under Georgia's statutes allowing direct actions against insurers of motor carriers. (Pl.'s Resp. Br. in Opp'n to Def. Prime's Mot. for Summ. J., at 2).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Georgia's long-arm statute reads as follows:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91. "[I]n assessing the propriety of the exercise of personal jurisdiction, courts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1263 (11th Cir. 2010). To determine whether personal jurisdiction exists, courts evaluate the parties' claims through a burden-shifting framework:

> A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.

*Id.* at 1257 (quotations marks and citations omitted).

As to her initial burden, the Plaintiff alleges that "Prime was transacting business in the State of Georgia" on the date of the Plaintiff's

4

injury. (Compl. ¶ 45). Challenging the Plaintiff's assertion of jurisdiction, the Defendant Prime contends that the Plaintiff's allegation alone, without specific facts about Prime's alleged business activities in Georgia, is insufficient to establish that Prime remains within the reach of Georgia's long-arm statute. (Br. in Supp. of Def. Prime's Mot. for Summ. J., at 5 (citing *IOU Cent., Inc. v. Embryolisse USA, Inc.*, 2021 WL 2557501, at *4 (N.D. Ga. Mar. 22, 2021))). Prime submits the Declaration of Doug Aime in support of its position that "Prime is not registered to transact business in Georgia, has not transacted business in Georgia, and does not own, use, or possess property in Georgia." (Aime Decl. ¶ 4). In response, the Plaintiff does not produce any additional evidence supporting jurisdiction but rather rests on its position that precedent on direct action statutes allows it to join the insurer of a motor carrier as a defendant to a lawsuit. (Pl.'s Resp. Br. in Opp'n to Def. Prime's Mot. for Summ. J., at 2). But "[a] court without personal jurisdiction is powerless to take further action," even if a plaintiff maintains a statutory right of action against a defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

Under Georgia law, a court has personal jurisdiction over a nonresident defendant if the defendant "[t]ransacts any business within" Georgia and if the lawsuit "aris[es] from" that business transaction. O.C.G.A. § 9-10-91(1).

> Interpreted literally, "transacts any business" requires that the nonresident defendant has purposefully done some act or consummated some transaction in Georgia. That said, a defendant need not physically enter the state. As a result, a nonresident's mail, telephone calls, and other "intangible" acts,

5

> though occurring while the defendant is physically outside of Georgia, must be considered. Therefore, we examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia.

*Diamond Crystal*, 593 F.3d at 1264 (quotation marks, alterations, and citations omitted). The question here is whether a commercial insurer who issues an auto policy to a transportation company in Florida that covers the entire United States within its coverage territory can be said to have transacted business within the state of Georgia, such that it would be within the reach of the state's long-arm statute.

In 2005, an Eleventh Circuit opinion answered that question in the affirmative, relying on precedent that "recognized that the Georgia long-arm statute, O.C.G.A. § 9-10-91, confers personal jurisdiction over a non-resident defendant to the maximum extent permitted by due process." *McGow v. McCurry*, 412 F.3d 1207, 1214–16 (11th Cir. 2005), *abrogated by Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 279 Ga. 672 (2005). The court then held that exercising jurisdiction over an out-of-state insurance company that provided coverage in all 50 states comported with due process. *Id*. But in 2010, the Eleventh Circuit acknowledged that the Supreme Court of Georgia departed from the coextensive conferral of jurisdiction between Georgia's long-arm statute and constitutional due process, thereby abrogating the Eleventh Circuit's decision in *McGow*. *See Diamond Crystal*, 593 F.3d at 1259 (citing *Innovative Clinical*, 279 Ga. at 673).

The parties do not cite, nor is the Court aware of, any binding Eleventh Circuit authority affirming the holding of *McGow* in the wake of *Innovative Clinical*. All three district courts within Georgia, however, have opined on the reach of Georgia's long-arm statute under *Innovative Clinical* and *Diamond Crystal*. *See, e.g.*, *James River Ins. Co. v. Kannon & Kannon Ins., Inc.*, 2010 WL 4704773, at *4 (S.D. Ga. Nov. 12, 2010) (finding no personal jurisdiction under O.C.G.A. § 9-10-91(1) where a malpractice insurance policy's coverage of Georgia did not constitute a sufficient business transaction to subject the insurer to suit in the state); *W. World Ins. Co. v. Narconon of Ga., Inc.*, 2014 WL 11860698, at *3 (N.D. Ga. May 6, 2014) (finding no personal jurisdiction under O.C.G.A. § 9-10-91(1) where a California insurer's issuance of a policy with a 50-state coverage territory did not constitute transaction of business without purposeful operations in Georgia); *Glarner v. Intact Ins. Co.*, 2020 WL 4810687, at *3–6 (M.D. Ga. Apr. 28, 2020) (finding no personal jurisdiction under O.C.G.A. § 9-10-91(1) where a Canadian insurer's issuance of an auto policy covering the United States in its coverage territory did not constitute transacting business in Georgia without evidence of any other business activity in the state).

*Glarner* appears to be the most similar both to the present case and to *McGow*. The Middle District Court of Georgia in *Glarner* rejected the plaintiff's argument that a Canadian insurer's conduct amounted to a business transaction in Georgia because it purposefully extended coverage under its

7

policy to the state and undertook defending the action. *Glarner*, 2020 WL 4810687, at \*4–5 ("[T]he fact that Defendant's insurance policy covers territory including Georgia—and obligates Defendant to defend insureds in 50 states, including Georgia—is not a business transaction 'within Georgia.'" (citing *Western World*, 2014 WL 11860698, at \*3, and *James River*, 2010 WL 4704773, at \*4)). The Court finds that, like in *Glarner*, the Plaintiff has not alleged facts plausibly establishing that Prime transacted any business in Georgia, such that it would be subject to personal jurisdiction in this Court. Accordingly, the Plaintiff has failed to carry her burden to produce evidence supporting jurisdiction, and Prime should be dismissed as a Defendant to this action.[2] It is true that none of these cases involved an insurance company joined under the direct action statute, O.C.G.A §40-1-112(c), but the Plaintiff offers no reason that the analysis should not be the same.

As a corollary matter, although subjecting a commercial insurer to

---

[2] The Court agrees with the Defendant Prime that the Plaintiff is not entitled to any additional time to conduct jurisdictional discovery. (Reply Br. in Supp. of Def. Prime's Mot. for Summ. J., at 5–6 (citing *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 830 (11th Cir. 2012) ("[A] district court does not abuse its discretion in dismissing the plaintiff's action for lack of personal jurisdiction, even before jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so."))). The Court also agrees with the Defendant Prime that the Plaintiff's reliance on *Mathews v. Rail Exp., Inc.*, 836 F. Supp. 873 (N.D. Ga. 1993), and *McGill v. Am. Trucking & Transp. Ins. Co.*, 77 F. Supp. 3d 1261 (N.D. Ga. 2015), are unavailing. (Reply Br. in Supp. of Def. Prime's Mot. for Summ. J., at 3–5).

personal jurisdiction in a state where its insured allegedly caused an accident undoubtedly comports with the traditional notions of fair play and substantial justice, *McGow*, 412 F.3d at 1215, Georgia case law is clear that the state's long-arm statute must separately authorize jurisdiction over the nonresident insurer. *Diamond Crystal*, 593 F.3d at 1264. Absent circumstances indicating that the underlying incident arises from the nonresident insurer's transaction of business in Georgia (or satisfaction of some other prong of the long-arm statute), the nonresident insurer cannot be haled into court in the state. Whether that jurisdictional reality constitutes sound policy is not a question for this Court; indeed, it appears that Georgia appellate judges have urged the legislature for years to amend and expand the reach of the state's long-arm statute. *Innovative Clinical*, 279 Ga. at 674–75. That the Plaintiff can nonetheless pursue her claims for damages against the other Defendants here is perhaps an indicator of the reason for the legislature's inaction on the issue.

## IV.    Conclusion

For the foregoing reasons, the Defendant Prime's Motion for Summary Judgment [Doc. 42] is GRANTED.

SO ORDERED, this ___27th___ day of March, 2023.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge